IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Veronica H., | ) |
|     Plaintiff, | ) No. 18 C 7447 |
| v. | ) Magistrate Judge M. David Weisman |
| ANDREW SAUL, Commissioner of Social Security, | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Veronica H. appeals the Social Security Administration Commissioner's decision denying her application for benefits. For the reasons set forth below, the Court generally grants Plaintiff's motion for summary judgment [15], denies Defendant's motion for summary judgment [23] and remands this case for further proceedings.

### Background

Plaintiff applied for benefits on May 9, 2013, alleging a disability onset date of June 26, 2012. (R. 235.) Her application was denied initially on August 2, 2013, and upon reconsideration on March 6, 2014. (R. 148–68.) Plaintiff requested a hearing, which was held by an Administrative Law Judge ("ALJ") on February 3, 2015. (R. 77.) At the hearing, Plaintiff amended her onset date to May 23, 2013. (R. 80–81.) On March 13, 2015, the ALJ issued an unfavorable decision finding Plaintiff not disabled. (R. 2404–49.) The Appeals Council declined to review the decision (R. 1–4), leaving the ALJ's decision as the final decision of the Commissioner. *See Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

On September 3, 2015, Plaintiff filed a complaint in the Northern District of Illinois. Following briefing by the parties, this Court remanded the case on July 27, 2017. (R. 2472–78.)

Another hearing was held before an ALJ on May 17, 2018. (R. 2340–03.) On June 28, 2018, the ALJ found Plaintiff not disabled between May 23, 2013 and March 13, 2015. (R. 2517–68.) The Appeals Council declined to review the decision on September 8, 2018. (R. 2334–39.)

## Discussion

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). While generous, this standard "is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. Under the regulations, the Commissioner must consider: (1) whether the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether the claimant's impairment meets or equals any listed impairment; (4) if not, whether the claimant retains the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether he is unable to perform any other work existing in significant numbers in the national economy. *Id.*; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four, and if that burden is met, the burden shifts at step

five to the Commissioner to provide evidence that the claimant is capable of performing work existing in significant numbers in the national economy. *See* 20 C.F.R. § 404.1560(c)(2).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 23, 2013, the alleged onset date. (R. 2524.) At step two, the ALJ found that Plaintiff had the following severe impairments: "congenital right eye blindness; sleep apnea; knee degenerative joint disease; history of right ankle fracture; sciatica/degenerative disc disease; obesity; depression/bipolar disorder; and post-traumatic stress disorder." (*Id.*) At step three, the ALJ found that Plaintiff did not have "an impairment or combination of impairments that meets or medically equals the severity" of one of the listed impairments. (R. 2525.) This finding led the ALJ to conclude at step four that prior to March 14, 2015, Plaintiff had the residual functional capacity to "perform sedentary work" with certain exceptions. (R. 2528–29.) At step five, the ALJ determined that "there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed." (R. 2555.) Accordingly, the ALJ concluded that Plaintiff was not disabled prior to March 14, 2015 under the Social Security Act, but became disabled on that date. (R. 2556.)

**A.) Medical Opinion Evidence**

An ALJ is required to give a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R § 404.1527(c)(2);[1] *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). The ALJ must give good reasons for the weight that she assigns a treating physician's opinion. *Bates v. Colvin*, 736 F.3d 1093, 1101 (7th Cir.

---

[1] As Defendant notes, the "treating physician" rule was abolished when new Social Security regulations went into effect on March 27, 2017, rescinding several rulings. The new regulations regarding the assessment of medical opinions only apply, however, to claims filed on or after their effective date.

2013); *Roddy v. Astrue*, 705 F.3d 631, 636–37 (7th Cir. 2013).  If an ALJ chooses not to give a treating physician's opinion controlling weight, "the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion."  *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *see also* 20 C.F.R. § 404.1527(c).

Plaintiff challenges the ALJ's determination to give the March 2014 and February 2015 opinions of her treating psychiatrist, Dr. Eler, "little weight" because the opinions – both of which fall within the disputed disability timeframe – were inconsistent with: (1) treatment notes that documented high Global Assessment Functioning ("GAF") scores at times; (2) evidence of Plaintiff's improvement; and (3) evidence Plaintiff had the ability to drive, take medications, and follow-up with treatment.  (R. 2550–51.)  With respect to the GAF scores, the ALJ called into question Dr. Eler's assignment of a 40 GAF score in March 2014 and between 30 and 40 in February 2015 when Plaintiff received GAF scores between 70 and 90 in 2013 (R. 3424–26) and a 55 GAF in February 2014 (R. 3420).  GAF scores, "without more, carry little probative value."  *Land v. Colvin*, No. 12 C 9189, 2014 WL 2198373, at *5 (N.D. Ill. May 27, 2014).  They are viewed as problematic as they only provide a "snapshot of a particular moment" rather than a longer-term prognosis.  *Sambrooks v. Colvin*, 566 Fed. App'x 506, 511 (7th Cir. 2014); *see, e.g.*, *Barnica v. Colvin*, No. 13-C-1012, 2014 WL 4443279, at *5 (N.D. Wis. Sept. 9, 2014) ("GAF scores can . . . be troublesome if an ALJ plucks a single score out of the record and places too much emphasis on it."). Here, the ALJ did not error by pointing out significant changes in Plaintiff's GAF score in a relatively short period of time.  Rather than "cherry-picking" a single inconsistent GAF score, the ALJ cited several differing scores from the same provider that cast doubt on Dr. Eler's March 2014 and February 2015 assessments.

4

While the ALJ adequately addressed Plaintiff's GAF scores, she failed to sufficiently explain how Plaintiff's modest response to treatment undermines Dr. Eler's opinions. *See, e.g., Scott v. Astrue*, 647 F.3d 734, 739–40 (7th Cir. 2011) ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce."); *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008) (noting that "[a] person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days"). In March 2014, Dr. Eler found Plaintiff markedly limited in the ability to, among other things, (1) remember locations and work like procedures; (2) understand and remember detailed instructions; (3) maintain attention and concentration for extended periods; and (4) work with co-workers or peers without distracting them or exhibiting behavioral extremes. (R. 1201—03.) Dr. Eler's findings in February of 2015 again confirmed these various limitations in addition to others. (R. 3406.) Although the ALJ discounted these opinions in part because Plaintiff was "generally progressing/improving," she failed to point to specific evidence of this improvement that adequately undermines the assessment of a treating physician. (R. 2550.) In addition, the ALJ's reliance on Plaintiff's activities of daily living, including her ability to "drive, take numerous medications, [and] follow up with treatment," overlooked the critical differences between activities of daily living and activities in a full-time job. (R. 2550.) *See, e.g., Scrogham v. Calvin*, 765 F.3d 685, 700 (7th Cir. 2014) (claimant rarely driving, mowing the lawn, and performing yardwork was not evidence that he could participate in gainful activity). The ALJ needed to include a more fulsome discussion of how Plaintiff's sporadic activities of daily living contradicted the findings of her treating physician regarding Plaintiff's ability to function in a work environment. *See, e.g., Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) ("An ALJ must offer good reasons for discounting the opinion of a treating physician."). Critically, the ALJ also failed

5

to assess Dr. Eler's opinion using the required regulatory factors. *See* 20 C.F.R. § 404.1427(c) (stating that an ALJ "will evaluate every medical opinion" by considering the nature, extent, and length of the treatment relationship, the frequency of examination, the physician's specialty, and the consistency and supportability of the opinion). Before discounting the opinion of a psychiatrist who treated Plaintiff on a regular basis for years and whose treatment focused on Plaintiff's disabling impairments, the ALJ had an obligation to assess these regulatory factors.

Plaintiff next argues that the ALJ found the March 2014 opinion of her treating internist, Dr. Forys, was "not fully supported" without adequate explanation, and failed to address Dr. Forys' December 2017 statement entirely. (R. 2548, 2552.) The Court agrees that the ALJ did not sufficiently discuss why she found Dr. Forys' conclusions regarding Plaintiff's restrictions not fully supported. The ALJ failed to identify inconsistent evidence to challenge Dr. Forys' March 2014 findings, which were generated during the heart of the disputed disability period (May 23, 2013 through March 13, 2015). Instead, the ALJ provided a sweeping criticism of the opinions of Dr. Forys and Dr. Birn-Forys without much more: "These doctors apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported." (R. 2545.) Dr. Forys' March 2014 treatment notes indicate, however, that clinical findings supported his conclusions and corroborated Plaintiff's complaints of severe knee pain. Among other diagnostic findings, he cited cracking and popping in the knees, a positive x-ray for joint space narrowing, and a positive straight leg raise test. (R. 1189.) If an ALJ declines to give controlling weight to the opinion of a treating physician, a sound explanation must be given for that decision." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). Such an explanation is lacking here. Moreover, the ALJ did not assess Dr. Forys' opinion using the required regulatory factors. *See* 20 C.F.R. § 404.1427(c). As

Dr. Forys regularly treated Plaintiff (once a month or so) for several years and the nature of the treatment focused on Plaintiff's disabling physical impairments, the ALJ needed to provide a more thorough explanation for why Dr. Forys' opinion was not given more than "limited weight." (R. 2548.) The Court also agrees that the ALJ erred by failing to assess Dr. Forys' December 2017 findings, which related to the relevant time period. Dr. Forys concluded that Plaintiff's symptoms, including "sharp, severe" pain in both knees and ankles, dated back to May 1, 2013 and would "likely increase if she [was] placed in a competitive work environment." (R. 3168–72.) Despite these findings from Plaintiff's treating physician, the ALJ neglected to assign any weight to Dr. Forys' December 2017 opinion. (R. 2552.)

Plaintiff also challenges the ALJ's decision to give "little weight" to the March 2015 and July 2016 opinions of treating physician, Dr. Birn-Forys, in which she found the following: Plaintiff "could not walk without the assistive device or assistance of another person; was severely limited in the ability to walk due to an arthritic, neurological, oncological, or orthopedic condition, and could not walk 200 feet without stopping to rest because of one of the above conditions." (R. 2548.) The ALJ dismissed these statements because "the examination findings do not reflect such limitations, i.e., hourly scheduled breaks, and no evidence for occasional grasping bilaterally and no overhead reaching." (R. 2548.) Rejecting a treating physician's opinion because of a lack of identified work limitations has no basis in the law. The ALJ's treatment of Dr. Birn-Forys' opinions also suffers from the same fatal flaw as the treatment of Dr. Eler's and Dr. Forys' opinions: the ALJ failed to assess the opinions using the required regulatory factors. *See* 20 C.F.R. § 404.1427(c). As Dr. Birn-Forys treated Plaintiff regularly, the ALJ had an obligation to provide an adequate analysis of the regulatory factors. All of these errors with respect to the above medical opinion evidence require remand.

7

Although the need for remand already exists, the Court will briefly address the remainder of Plaintiff's arguments concerning the ALJ's treatment of the medical opinion evidence. Plaintiff contends that the ALJ mistakenly accorded "some weight" to the findings of two non-examining state agency medical consultants, Dr. Free and Dr. Bilinsky, even though the doctors did not have the opportunity to review the entire record before they authored their opinions. (R. 2544.) Based on the ALJ's reasoning, the Court disagrees. An ALJ must "weigh the degree to which non-examining opinions consider and weigh evidence, including the evidence of treating physicians." *Heer v. Berryhill*, No. 17 C 2670, 2018 WL 4489586, at *5 (N.D. Ill. Sept. 19, 2018); *see also* 20 C.F.R. § 404.1527(c)(3) ("We will evaluate the degree to which these medical opinions consider all of the pertinent evidence in [Plaintiff's] claim, including medical opinions of treating and other examining sources.") Dr. Free reviewed the file on August 1, 2013 (R. 142–45), just a few months into the disputed time period, and Dr. Bilinsky reviewed the record on March 4, 2014 (R. 161–63), a full year before the end of the disputed period. The ALJ acknowledged this evidentiary deficit, however, and adjusted the doctors' findings appropriately, adding more restrictions to conform with additional records from Dr. Forys and address Plaintiff's morbid obesity and visual limitations." (R. 2544.)

With respect to the opinion of one-time examining consultant, Dr. Kogan, the Court agrees with Plaintiff that the ALJ failed to explain why this opinion was entitled to more weight than those of Plaintiff's treating physicians. Opinions from one-time examining sources are generally entitled to less weight than the opinions provided by treating physicians. *See* 20 C.F.R. § 404. 1527 (c)(1). Dr. Kogan stated the following: Plaintiff "had moderate difficulty in standing-uses quad cane for support . . . no difficulty sitting, hearing, moderate difficulty lifting, carrying no difficulty with speech, gait-limping on the right (uses quad cane for support), fine manipulation

8

and handling small objects is intact." (R. 1085–86.) The ALJ assigned Dr. Kogan's opinion "some weight" without sufficiently explaining her reasoning for doing so. (R. 2544.) *See, e.g.*, *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000) (opinions from consultative examiner that claimant had "mild" or "moderate" limitations in particular exertional activities so vague as to render the opinions useless).

The ALJ also gave "significant weight" to the opinions of two non-examining state agency psychological consultants, Dr. Low and Dr. Taylor, who found that Plaintiff had "moderate limitations in activities of daily living, moderate difficulties maintaining social functioning, moderate difficulties maintaining concentration, persistence or pace, and one to two episodes of decompensation." (R. 2544–45.) Dr. Low reviewed the file on July 31, 2013 (R. 140–41; 144–46) and Dr. Taylor reviewed on February 28, 2014 (159–60; 163–65.) Relevant evidence regarding Plaintiff's mental abilities, however, was missing from the files that these doctors reviewed, specifically Dr. Eler's psychiatric treatment notes. (R. 161.) The ALJ failed to articulate why the evidence provided by these non-examining consultants was entitled to substantially more weight than the evidence provided by Plaintiff's examining and treating sources, particularly in light of the fact that the non-examining consultants reviewed a deficient medical record. *See, e.g.*, *Heer v. Berryhill*, No. 17 C 2670, 2018 WL 4489586, at *5 (N.D. Ill. Sept. 19, 2018) ("The opinions of state agency consultants can be given weight only to the extent they are supported by evidence in the record, which includes evidence that was not in their possession at the time they issued their opinions."); 20 C.F.R. § 404.1527(c)(3) (stating that "because nonexamining sources have no examining or treating relationship with [Plaintiff], the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their medical

opinions."); SSR 96-6p (opinions from a non-examining source may outweigh a treating specialist if they review a "complete case record that includes a medical report from a specialist").

**B. The ALJ's Hypothetical Question to the Vocational Expert and Evaluation of Plaintiff's Testimony**

Plaintiff also challenges the ALJ's credibility determination and reliance on vocational expert testimony – issues that depend, at least in part, on a proper assessment of the medical evidence. Thus, the ALJ must revisit these issues on remand as well.

## Conclusion

While Plaintiff requests that the decision of the Commissioner be "reversed solely for an award of benefits," (Dkt. 16 at p. 25), the Court is not in a position to grant such relief at this time. *See, e.g.*, *Allord v. Astrue*, 631 F.3d 411, 417 (7th Cir. 2011) (noting that if any "lingering doubt regarding [claimant's] qualification for disability benefits" remains, a remand for an award of benefits is inappropriate); *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993) (an award of benefits "is essentially a factual finding best left for the Secretary to address in the first instance, unless the record can yield but one supportable conclusion"). Instead, for the reasons set forth above, the Court generally grants Plaintiff's motion for summary judgment [15], denies Defendant's motion for summary judgment [23] and remands this case for further proceedings.

**SO ORDERED.**  ENTERED: August 20, 2019

_____
**M. David Weisman**
**United States Magistrate Judge**